UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMESE SABO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 23 cv 2189 |
| ) | |
| SECRETARY ALEJANDRO MAYORKAS, ) | Judge Rebecca R. Pallmeyer |
| UR JADDOU, MERRICK GARLAND, ) | |
| KEVIN RIDDLE, KATHY BARAN, LAURA ) | |
| ZUCHOWSKI, and TERRI ROBINSON ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

After receiving conditional permanent resident status in the United States, Emese Sabo, a Romanian citizen, filed an I-751 Petition to Remove Conditions on Residence, as well as two I-130 Petitions for Alien Relative on behalf of her two sons. The three petitions sat unresolved for years. Ms. Sabo now seeks relief under both the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, alleging unreasonable delay on the part of the United States Customs and Immigration Service ("USCIS" or "Defendants").[1] After Sabo filed this case in federal court, USCIS took action: it denied her I-751 petition, began removal proceedings against her, and issued requests for evidence pertaining to her two pending I-130 petitions. Defendants now move to dismiss Ms. Sabo's complaint [13], and, for the reasons discussed below, the motion is granted.

---

[1] Alejandro Mayorkas is the Secretary of the Department of Homeland Security; Ur Jaddou is the Director of USCIS; Merrick Garland is the United States Attorney General; Kevin Riddle is the Director of USCIS' Chicago Field Office; Kathy Baran is the Director of USCIS' California Service Center; Laura Zuchowski is Director of USCIS' Vermont Service Center; and Terri Robinson is Director of USCIS' National Benefits Center. (*See* Compl. [1] ¶¶ 3–9.) In addition to her mandamus and APA claims, Plaintiff seeks the award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). (*See id.* ¶¶ 50–53.)

## **STANDARD OF REVIEW IN ADMINISTRATIVE PROCEEDINGS**

Noncitizens seeking to remain in the country permanently may apply to the Secretary of Homeland Security for an immigrant visa adjusting their status to that of a lawful permanent resident ("LPR"). *See* 8 U.S.C. §§ 1151–54. One basis for LPR status is a spousal relationship with a United States Citizen. For immigrants seeking adjustment of status on this basis, the application process includes a Form I-130 Petition for Alien Relative, filed by a U.S. citizen or lawful permanent resident ("LPR") seeking LPR status for a familial relative. *Id.* § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). When an I-130 application is predicated on a spousal relationship, USCIS must assess whether the marriage is bona fide before approval. *See* 8 U.S.C. § 1361; 8 C.F.R. § 204.1(f)(1).

Immigrants seeking LPR status on these grounds must also file a Form I-485 petition for adjustment of status to that of a permanent resident. 8 C.F.R. § 245.2(a)(3)(ii); *see also* 8 U.S.C. § 1255(a).[2] If USCIS accepts an I-485 application, the applicant is granted LPR status on a conditional basis and may temporarily remain in the United States for up to two years, at which time the conditional LPR status expires. 8 U.S.C. § 1186a(a)(1), (c)(1)(A), (d)(2)(A). Then, yet another petition—the I-751 Petition to Remove Conditions on Residence—is required; the petition allows the applicant to remove the "conditional" basis of their permanent residency and thus actually remain in the United States permanently. *Id.* § 1186a(c)(1)(A), (c)(3)(B). During this process, USCIS may waive certain requirements for an I-751 originally filed jointly with a spouse if the petitioner's good-faith marriage subsequently ends in divorce, or if the petitioner is "subjected to extreme mental cruelty" or physical abuse by their spouse. 8 U.S.C. § 1186a(c)(4)(b), (d); *see also* 8 C.F.R. § 216.5(a)(1)(ii), (e)(3).

---

[2] Those seeking permanent residency on account of employment also use I-485 petitions. *See I-485, Application to Register Permanent Residence or Adjust Status*, USCIS.GOV (last visited May 29, 2024), https://www.uscis.gov/i-485; *see also* 8 U.S.C. § 1151.

If at any point in this process USCIS determines that "substantial and probative evidence" suggests the petitioner's marriage was fraudulent—that is, that it was "for the purpose of evading the immigration laws"—USCIS must deny the application. 8 C.F.R. § 204.2(a)(1)(ii). Before doing so, however, USCIS issues a Notice of Intent to Deny ("NOID"), informing the petitioner of the tentative adverse finding and the evidence supporting it, and shifting the burden to the petitioner to rebut that conclusion. *See Id.* § 103.2(b)(8). Ultimately, if USCIS denies an I-751 petition, the petitioner's "lawful permanent resident status shall be terminated as of the date of the director's written decision," the petitioner is "instructed to surrender any Permanent Resident Card previously issued," and USCIS issues a notice to appear and commences removal proceedings. *Id.* §§ 216.4(d)(2), 239.1. At those removal proceedings, the petitioner can seek review of the prior decision, including by challenging a finding of fraudulent marriage. *Id.* § 216.4(d)(2).

## **BACKGROUND**[3]

Ms. Sabo is a native of Romania.[4] (Pl.'s Compl. For Writ of Mandamus and Further Relief (hereinafter "Compl.") [1] ¶ 19.) In September 2013, she came to the United States on a tourist visa with her two young children and never left the country. (Ex. 1 to Mem. of Law in Supp. of the Defs.' Mot. to Dismiss (hereinafter "I-751 Denial") [14-1] at 9.) On June 30, 2015, she married

---

[3] The court largely relies on Ms. Sabo's complaint in recounting the factual background of her case; however, where exhibits attached either to her complaint [1] or to the Defendants' memorandum in support of their motion to dismiss [14] fill in details of documents she references in the complaint or which surface later and bear on whether her complaint is now moot, the court considers them as well. *See Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 922 (N.D. Ill. 1999) (considering exhibits as part of the pleadings where "the Complaint refers expressly or implicitly to all of the exhibits" in defendant's motion to dismiss).

[4] Ms. Sabo appears to hold dual citizenship in both Romania and Hungary; her complaint refers to her as a Romanian native and citizen, while USCIS' removal notice lists her as a Romanian native and Hungarian citizen. (*Compare* I-130 Receipt Notices, Ex. B to Compl. [1-2] at 1–2 (listing "Country of Birth" as Romania), *with* Ex. 2 to Mem. of Law in Supp. of the Defs.' Mot. to Dismiss [14-2] at 5.) In an affidavit responding to USCIS' NOID regarding her I-751 petition, Ms. Sabo claimed she had obtained dual citizenship with Hungary so that she could "gain a waiver visa for [her] planned visit to the U.S." in 2013. (Ex. 1 to Mem. of Law in Supp. of the Defs.' Mot. to Dismiss [14-1] at 9.)

Attila Valder, a U.S. citizen. (Marriage Certificate, Ex. D to Compl. [1-4].) A year into their marriage, Valder filed concurrent I-130 and I-485 petitions on Ms. Sabo's behalf, which were approved on March 29, 2017, rendering Ms. Sabo a conditional permanent resident. (Ex. 2 to Mem. of Law in Supp. of Defs.' Mot. to Dismiss (hereinafter "Notice to Appear") [14-2] at 5.) Continuing the long trek to lawful permanent residency, on January 28, 2019, Valder and Ms. Sabo jointly filed an I-751 petition. (Compl. ¶ 20.)

More than a year later, in October 2020, Ms. Sabo filed I-130 petitions on behalf of her two children, both of whom were minors. (*Id.* ¶ 27; I-751 Denial at 4 (listing the children as being twelve and eight in June of 2015).) By the time she filed the I-130 petitions, however, Ms. Sabo's five-year marriage to Mr. Valder appears to have fallen apart. In November 2020, her attorney "filed an amended I-751 petition based on the extreme cruelty Ms. Sabo ha[d] suffered at her husband's hand throughout the couple's marriage." (Ex. I to Compl. [1-9] at 2.)

By the time an interview was scheduled with a USCIS officer on Ms. Sabo's I-751 petition, she and Valder had separated. (Compl. ¶ 22; *see also* Ex. G to Compl. [1-7] at 2.) At that interview, which occurred on March 16, 2021,[5] the interviewing officer (a Ms. Camacho) accepted Ms. Sabo's request to amend her petition on the basis that Valder had subjected her to extreme mental cruelty. (Compl. ¶ 22.) Ms. Sabo handed over hundreds of pages of evidence both to prove her marriage was in good faith and to show that her husband had subjected her to extreme mental cruelty during their marriage; Officer Camacho promised to take those materials home, review them, and "render a decision quickly." (*Id.* ¶ 23; Ex. G to Compl. at 2.)

But that did not happen. Four months later, Ms. Sabo's marriage was formally dissolved. (Compl. ¶ 24.) Soon after, on August 25, 2021, Ms. Sabo submitted a letter to Officer Camacho notifying her of the dissolution, attaching a copy of the court judgment doing so, and requesting

---

[5] USCIS' notice to appear claims that Ms. Sabo was interviewed on January 27, 2021. (Notice to Appear at 5.) This is incorrect; she was notified of the interview date on January 27, but was interviewed on March 16. (*See* Ex. K to Compl. [1-11] at 1.)

that USCIS approve her petition either on the grounds that she had a good-faith marriage that ended in divorce or that she was subjected to extreme cruelty. (*Id.* ¶ 25; *see* 8 U.S.C. § 1186a(c)(4)(b), (d).) Her petition, however, sat unresolved. Other than receiving an auto-generated notice that her conditional LPR status had been extended for two years while she awaited a decision, she received no communication from USCIS. (Compl. ¶ 26.) The 48-month extension came and went with no action. (*Id.*) And for this entire time, Ms. Sabo heard nothing on the I-130s, receiving no update of any kind from 2020 until well into 2023. (*Id.* ¶¶ 27–28.)

On April 7, 2023, Plaintiff brought this suit under the Mandamus Act and the APA, alleging unreasonable delay in handling her I-751 (Count I) and I-130 (Count II) applications. (*See id.* ¶ 1.) She also moved for attorney's fees and costs under 28 U.S.C. § 2412(d)(1)(A), the "Equal Access to Justice Act" (Count III). This appears to have prompted action on the part of USCIS. Sometime in the spring of 2023, USCIS issued requests for evidence ("RFE") pertaining to the two I-130 petitions; more ominously, it also issued a NOID notifying Ms. Sabo of the agency's intent to deny her I-751 petition. (Defs.' Agreed Mot. to Extend Time to Answer or Otherwise Respond [7] at 1–2.) Ms. Sabo responded to the NOID on June 16 (*id.* at 1) and also "timely responded to each RFE" for the I-130s. (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss (hereinafter "Pl.'s Opp'n") [16] at 2.) Nonetheless, on August 18, 2023, USCIS denied her I-751 petition, claiming that her marriage was not bona fide and reviewing evidence USCIS relied on for that conclusion. (*See generally* I-751 Denial.) What followed was a notice to appear issued to Ms. Sabo, scheduling removal proceedings for August of 2026. (Notice to Appear at 1.) The two I-130 petitions remain outstanding.

## **DISCUSSION**

The standards governing motions to dismiss are familiar. A court must dismiss a case if it lacks subject matter jurisdiction or if the complaint fails to state a claim on which relief can be granted. FED. R. CIV. P. 12(b)(1), (6). The court takes all factual allegations in the complaint as true when deciding whether dismissal is necessary on either ground. *See Retired Chi. Police*

5

*Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996); *Hardimon v. Am. River Transp. Co., LLC*, 95 F.4th 1130, 1133 (7th Cir. 2024).

As the court reads their motion, Defendants raise five grounds for dismissal: 1) that Ms. Sabo's unreasonable delay claim concerning her I-751 petition is moot because USCIS has since adjudicated her I-751 petition; 2) that Ms. Sabo's mandamus claims are redundant or otherwise inappropriate, given the existence of her APA claim; 3) that her unreasonable delay claim concerning the I-130 petitions is barred by the APA's final agency action and exhaustion requirements—specifically, because she must wait for an outcome in the removal proceeding to determine whether her predicate LPR status survives; 4) that subsequent actions by USCIS, including the denial of her I-751 and the RFEs in the I-130s, moot Plaintiff's unreasonable delay claims; and 5) that there has been no unreasonable delay. For the reasons discussed below, the court determines that Plaintiff's claims related to both her I-751 and I-130 petitions are moot and grants the motion.

**I.     Plaintiff's I-751 Claim is Moot and Her Claim for Mandamus Relief Concerning the I-130 Petitions is Duplicative.**

Before addressing the more seriously contested issues in this case, the court addresses those that are more straightforward—and doom Plaintiff's APA claim for the I-751 and her mandamus claims for both sets of applications.

First, Plaintiff concedes that her unreasonable delay claim concerning the I-751 petition has been mooted by USCIS' denial and initiation of removal proceedings. (Pl.'s Opp'n at 2.) Indeed, a case is mooted when "the issues presented are no longer 'live'" and when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotations omitted). The relief Ms. Sabo originally sought here—an order compelling agency adjudication of the I-751 petition that had allegedly been unlawfully withheld—has already occurred. *See Mufti v. Lynch*, 190 F. Supp. 3d 827, 833 (N.D.

Ind. 2016) (noting the mootness problem in similar circumstances). Accordingly, the court dismisses Count I of her complaint.

Second, mandamus is inappropriate in this case because Ms. Sabo is pursuing the same relief in a separate action. Mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Ebrahimi, v. Blinken et al.*, No. 23 C 3867, 2024 WL 2020038, at *8 (N.D. Ill. May 3, 2024) (quoting *United States* v. *Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019)). A court may grant mandamus only if the plaintiff demonstrates: "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002) (citing *Scalise v. Thornburgh*, 891 F.2d 640, 648 (7th Cir.1989)). Mandamus is thus precluded in cases such as this, where "relief sought via mandamus is duplicative of that sought under the APA . . . ." *Ebrahimi*, 2024 WL 2020038, at *8 (citing *Antonishin v. Keisler*, 627 F. Supp. 2d 872, 879–80 (N.D. Ill. 2007); *Holasek v. U.S. Dep't of Justice*, 123 F. Supp. 2d 1126, 1129 (N.D. Ill. 2000)). Another adequate remedy is readily available to Ms. Sabo—a fact illustrated by her seeking the same relief pursuant to the APA. Accordingly, the court dismisses her petition for a writ of mandamus and turns to her unreasonable delay claim.

**II.     Plaintiff's APA Claim Concerning Her I-130 Petitions is Moot.**

The APA mandates that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," and that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). Typically, petitioners may state a claim for unreasonable delay where USCIS fails to timely adjudicate an I-130 petition. *See Ebrahimi*, 2024 WL 2020038, at *9–13 (addressing merits of unreasonable delay claim concerning failure to adjudicate I-130 petition and collecting cases). Ms. Sabo has made a clam for unreasonable delay in this case, but her claim has been mooted by two actions USCIS took while this case was pending: it issued RFEs in her I-130 petitions and it denied her I-751 petition.

First, the RFEs sent to Ms. Sabo regarding her I-130 petitions: The weight of authority holds that "[w]hen petitioners seek to compel adjudication of their application for an adjustment of their immigration status and the USCIS issues an RFE, the action is moot." *Bokhari v. Garland*, No. 2:23-CV-01474-GRB, 2023 WL 5283898, at *1 (E.D.N.Y. Aug. 17, 2023); *see also Xu v. Nielsen*, No. 18-2048, 2018 WL 2451202, at *1 (E.D.N.Y. May 31, 2018) (finding RFE mooted unreasonable delay claim); *Lin v. Johnson*, No. 19-2878, 2019 WL 3409486, at *1 (E.D.N.Y. July 29, 2019) (same); *Lu v. Sessions*, No. 18-1713, 2018 WL 2376304, at *1 (E.D.N.Y. May 24, 2018) (same); *cf. An v. Mayorkas*, No. CV 21-385 (EGS), 2022 WL 522970, at *2–3 (D.D.C. Feb. 22, 2022) (recognizing "persuasive authority that holds that the issuance of an RFE moots an action to compel adjudication of an immigration petition," but nonetheless finding RFEs did not moot plaintiff's case because plaintiff had specifically requested a "final decision" on his petition).

The court finds these cases persuasive. The relief Ms. Sabo requests is that USCIS "adjudicate [her] Forms I-130," and—perhaps prompted by her complaint—USCIS has now started doing so. (*See* Compl. at 11.) Though other steps remain before the I-130 petitions are accepted or denied, the court is not appropriately positioned to oversee the entire rest of the adjudicative process, or stand over USCIS' shoulders to order each subsequent action.[6] *See Ye*, 2017 WL 2804932, at *2 (noting, after issuance of RFE's, "now that relief has been retained, this Court is not going to keep the case open based on plaintiff's desire to have a judicial overseer of her administrative process.") This alone moots her claim.

There is a second basis for this conclusion: USCIS' subsequent denial of Ms. Sabo's I-751 petition independently moots her unreasonable delay claims regarding the I-130 petitions. This is true for two related reasons. First, adjudication of Ms. Sabo's I-751 petition settles the

---

[6] For this reason, the court disagrees with the few cases that have drawn the opposite conclusion as to whether RFEs moot unreasonable delay claims. *See Lamarche v. Mayorkas*, __ F. Supp. 3d __, 2023 WL 5759587, at *3 (D. Mass. Sept. 6, 2023) (rejecting argument that unreasonable delay claims were rendered moot because "[t]aking one step in the process by issuing RFEs does not mean the adjudication will not continue to be unreasonably delayed.").

antecedent question of her sponsorship status for the latter petitions—which tees up the I-130 petitions for resolution, effectively mooting any claim of delay. Second, because USCIS' denial of Ms. Sabo's I-751 petition at least temporarily precludes approval of her I-130 petitions, the court is no longer able to grant her effective relief.

Both of these reasons for dismissal relate to the relationship between USCIS' I-751 denial and Ms. Sabo's separate I-130 petitions. The parties dispute that relationship: Defendants argue that denying Ms. Sabo's I-751 petition has ended her LPR status immediately (pending challenge during removal proceedings), thus rendering her unable to sponsor the I-130s. (Mem of Law in Supp. of Defs. Mot. to Dismiss (hereinafter "MTD") [14] at 10.) Contrarily, Plaintiff claims that she retains conditional LPR status pending the outcome of her removal proceeding, and as a result nothing bars approval of her I-130 petitions in the interim.

The court agrees with Defendants on this score; the denial of Ms. Sabo's I-751 petition has suspended her ability to sponsor the I-130 petitions. The Code of Federal Regulations directs that when a petition to remove conditional basis of LPR status is denied, "[t]he alien's lawful permanent resident status shall be terminated as of the date of the director's written decision." 8 C.F.R. § 216.4(d)(2). A 1996 internal memorandum issued by the Immigration and Naturalization Service (INS)[7] echoes this conclusion, stating that "[s]trictly speaking, a conditional permanent resident whose Petition to Remove Conditions on Residence (Form I-751) has been denied by the director is no longer a lawful permanent resident, as of the date of the director's notice of termination." *Status of a Conditional Permanent Resident After Denial of I-751 During Pendency of Review by EOIR*, Genco Op. No. 96-12 (INS), 1996 WL 33166343, at *1. Importantly, according to this internal memorandum, immigration officials should thus "not approve any Form

---

[7] In the early 2000s, INS, which was originally responsible for adjudicating such petitions, was abolished and replaced by the Department of Homeland Security; since then, USCIS has been "a department within DHS . . . ." See *Taylor v. McCament*, 875 F.3d 849, 851 n.1 (7th Cir. 2017).

I-130 filed by such an alien after issuance of the termination notice, but before resolution of the deportation proceeding." *Id.* at *2 (citing 8 C.F.R. § 216.4(d)(2)). The memorandum also goes on to state that, to avoid abrupt and premature uprooting, noncitizens whose I-751 petitions have been denied "should be issued a temporary I-551"[8] to serve as "temporary evidence of legal permanent resident status during the duration of the deportation proceedings." *Id.* Though the memorandum is itself not binding on this court, both it and the regulation explicitly support Defendants' characterization of USCIS policy in Ms. Sabo's situation.

Ms. Sabo points to other provisions in the Code of Federal Regulations that speak more generally than § 216.4(d)(2). For example, one provision states that "[a] person in deportation, exclusion, or removal proceedings is entitled to evidence of permanent resident status until ordered excluded, deported, or removed." 8 C.F.R. § 264.5(g). To evidence such status, § 245(g) states that "USCIS will issue . . . a temporary permanent resident document that will remain valid until the proceedings are concluded." *Id.* Plaintiff also points to the regulations' definition of LPR status, which claims that "[s]uch status terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission." *Id.* § 1001.1(p).

Though the regulations are not a model of clarity, Defendants' reading is more persuasive. Section 216.4(d)(2) is explicit that denial of the I-751 petition effectively removes conditional LPR status; it is consistent with this that both Section 264.5(g) and the internal memorandum instruct USCIS, when an I-751 petition is denied, to nonetheless provide the petitioner with temporary documentation to allow them to maintain residency in the country pending removal proceedings. Additionally, § 1001.1(p) defines LPR status at a higher degree of generality than § 216.4(d); as Defendants point out, canons of interpretation preference specific regulations over general ones when there are conflicts. *See, e.g., United States v. Christophel*, 92 F.4th 723, 727 (7th Cir. 2024)

---

[8] "Ordinarily, the I-551 stamp acts as temporary proof of LPR status." *Mozdzen v. Holder*, 622 F.3d 680, 682 (7th Cir. 2010). Neither party discusses whether these stamps are still used in such circumstances and, if so, whether Plaintiff received one.

(noting that "[t]he specific governs the general"). Moreover, Plaintiff points to no evidence to rebut Defendants' claim that USCIS' practice is to defer action on I-130s until deportation proceedings settle the sponsor's LPR status. The fair reading of this regulatory scheme is that Ms. Sabo's I-751 denial has placed her I-130s in a kind of limbo, such that she is at least temporarily unable to successfully sponsor those petitions.[9]

USCIS' denial of Ms. Sabo's I-751 petition thus mooted her I-130 claims in two ways. First, the denial is a definitive step forward in resolution of Ms. Sabo's standing to sponsor the I-130 petitions—a step that by itself moots her claim of unreasonable delay. *See Markandu v. Thompson*, No. CV 07-4538 (JLL), 2008 WL 11510675, at *3 (D.N.J. June 11, 2008) (pointing out that "once the agency begins to spin its bureaucratic cogs toward decision," cases seeking action on immigration petitions become moot). Put differently, the denial of Ms. Sabo's I-751 adjudicates the merits of her I-130 petitions because it determines that she lacks the LPR status necessary to sponsor them. *See Ariwodo v. Hudson*, No. CIV A H-06-1907, 2006 WL 2729386, at *3 (S.D. Tex. Sept. 25, 2006) (finding delay claim moot after issuance of NOID because, though not final, it represented an "adjudication on the merits" of the petition).

Second, and relatedly, the I-751 denial robbed the court of its ability to award any "effectual relief whatever to the prevailing party." *Chafin*, 568 U.S. at 172 (quoting *Knox v. Service Employees,* 567 U.S. 298, 307 (2012)). When USCIS denied Ms. Sabo's I-751 petition, it (at least temporarily) robbed her I-130 petitions of a precondition to their approval. Accordingly, even if this court *could* direct USCIS to adjudicate Ms. Sabo's I-130 petitions, to do so while her status is in limbo would be equivalent to an order that the petitions be denied—a result neither party

---

[9] Even if this were not the case, § 216.4(d) and the internal memorandum Defendants cite provides a reasonable justification for their refusal to act on Ms. Sabo's I-130s before her removal proceeding, casting serious doubt on the plausibility of any further claim of unreasonable delay.

seeks.[10] In other words, because the court agrees that Ms. Sabo currently cannot sponsor an I-130 petition, the court cannot grant effective relief to her by forcing USCIS to adjudicate the two I-130 petitions she has filed. The circumstances have fundamentally changed in a way that prevents this court from ordering the relief Plaintiff seeks, so her claim is moot.[11]

## CONCLUSION

The court notes that USCIS' years-long delay in adjudicating Ms. Sabo's I-130 and I-751 petitions is regrettable. No one should have to languish in uncertainty for years while they and their children's futures remain in bureaucratic limbo. But regardless of whether the three-year delay Ms. Sabo originally challenged was unreasonable, her filing has now stirred the agency to

---

[10] Indeed, in the event the court mandated that USCIS act on the I-130 petitions (which, at this stage, would result in their denial), the court could not review that decision after the fact. *See* 8 U.S.C. § 1252(a)(2)(B) (stripping court of jurisdiction to review judgments concerning adjustments of status); 8 U.S.C.A. §§ 1255, 1229b(b).

[11] Defendants have made additional arguments for dismissal of Plaintiff's APA claim, but the court need not reach them and, in any event, finds them unpersuasive. First, Defendants emphasize that the APA limits judicial review of agencies' decisions only to "final agency action[s] for which there is no other adequate remedy in a court." *Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018) (quoting *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003)). The finality requirement bars challenge until the agency "has arrived at a definitive position" on it. *Dhakal*, 895 F.3d at 540 (quoting *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 193 (1985)). But this case is a challenge to agency *inaction* on the I-130 petitions, not an effort to relitigate the separate fraudulent marriage finding undergirding denial of her I-751. The latter decision will not be final until the conclusion of removal proceedings. As to the former, formally, nothing prevents the court from requiring Defendants to adjudicate Ms. Sabo's I-130 petitions.

Second, Defendant points out that a petitioner seeking review of administrative action must first exhaust available administrative remedies. *Darby v. Cisneros*, 509 U.S. 137, 146 (1993). But the APA's exhaustion requirement is not a perfect fit either. Again, Ms. Sabo's problem is not that she has failed to exhaust any available agency procedures. She filed this suit because USCIS had not taken any action at all on her I-130 petitions. USCIS has pointed to no intra-agency mechanism by which Ms. Sabo could have challenged its inaction prior to filing this suit.

In other words, the APA's typical restraints on judicial review map awkwardly onto Ms. Sabo's. Because the court finds that Ms. Sabo's case is mooted by USCIS' intervening actions of issuing RFEs regarding her I-130 petitions and denying her I-751 petition, however, it need not further explore the finality or exhaustion arguments.

action, and unfortunately for Ms. Sabo, the new circumstances countenance further delay. Accordingly, Defendants' motion [13] is granted.[12]

ENTER:

Dated: June 5, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

---

[12] The court adds that, by the time Plaintiff has gone through removal proceedings, if her status has been returned to that of lawful permanent residency, she may bring another claim for unreasonable delay on the adjudication of her sons' I-130 petitions. See Ebrahimi, 2024 WL 2020038, at *11 (noting that courts "have generally found that immigration delays in excess' of five years are unreasonable, 'while those between three [and] five years are often not unreasonable" (quoting Orozco v. Blinken, No. 22 C 5134, 2023 WL 4595377, at *4 (N.D. Ill. July 18, 2023)).

13